UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 11-mc-61974-MARRA

In re:

VOIP, INC.,

Debtor.

_____/

## OPINION AND ORDER

This cause is before the Court upon the Trustee's Motion to Dismiss Appeal as Equitably

Moot (DE 1); the Trustee's Amended Motion to Dismiss Appeal as Equitably Moot (DE 12) and

Appellants' Motion to Exclude Mediator's Statement (DE 6).  The motion is fully briefed and

ripe for review.  The Court has carefully considered the motion and is otherwise fully advised in

the premises.

I.  Background

On June 2, 2009, an involuntary chapter 7 bankruptcy petition was filed against the

Debtor VOIP, Inc. ("Debtor") by Noctua Fund, L.P., Allen Angel and Garyn Angel, pre-petition

state court judgment creditors of the Debtor, or assignees of a number of such judgment creditors

(hereinafter, "Judgment Creditors"). (Involuntary Petition, Ex. C, DE 12-3.)  The Debtor was a

Texas public company, but it maintained its principal place of business in the state of Florida.

Debtor's stock was traded on the over-the-counter bulletin board under the symbol "VOII."

(Complaint, case no. 09-cv-20957-DLG, ¶¶ 10-11, Ex. A, DE 12-1; Complaint, case no. 11-

61617-WJZ, ¶ 15, Ex. B, DE 12-2.) Pre-petition, the Debtor and its various subsidiaries and

affiliates were engaged in the telecommunications industry.  The Debtor provided voice-over-

internet protocol technology to retail customers and large suppliers of telecommunications

services, such as the Vonage Network. (Complaint, case no. 09-cv-20957-DLG, ¶ 10; Complaint, case no. 11-61617-WJZ, ¶ 15.)

Prior to the petition date, an individual named Barbara Mittman intervened in the Judgment Creditors' pre-petition state court action in her capacity as "collateral agent," asserting that she represented various other purported creditors of the Debtor. For ease of reference, these other creditors shall be referred to collectively as the "Lender Group."[1] As their agent, Mittman engaged in extensive litigation with the Judgment Creditors over the right to receive approximately $841,000.00 due to the Debtor from Vonage. These funds were subject to writs of garnishment in favor of the Judgment Creditors that were served on Vonage pre-petition. The Lender Group asserted a superior, secured interest in these funds stemming from substantial loans to the Debtor that were not repaid. (Motion to Dismiss Adversary Complaint in bankruptcy case 09-20935-RBR at 3; Ex. E, DE 12-5; (Proof of Claim in the amount of $15,647,311.76, Ex. 4, DE 11-4.) Based on the Lender Group's Proof of Claim and a review of the Bankruptcy Court's Claims Docket, the members of the Lender Group are the largest creditors of the Debtor's estate. (Claims Register, Ex. 5, DE 11-5.)

The Trustee obtained information from various sources regarding claims the bankruptcy estate has or may have against third-parties. For example, the Lender Group made demand on the Trustee to commence an action to pursue fraudulent transfer claims; i.e., a claim that two of the Judgment Creditors, Garyn Angel and Noctua Fund, LP and Noctua's principals Mark Baum and James Panther (hereinafter, "the Settling Parties") illegally received restricted VOIP S-8 stock pursuant to sham consulting agreements. (Opposition to Chapter 7 Trustee's Motion to

---

[1] The Lender Group are also the Appellants.

Approve Compromise and Settlement, Ex. 5, DE 11-5; Declaration of Anthony Cataldo, Ex. 9, DE 11-9.)  However, the Trustee did not file an adversary proceeding against the Settling Parties. (Motion for Derivative Standing to Pursue Claims against Mark Baum, James Panther and Noctua Fund on behalf of Debtor's Estate in bankruptcy case 09-20935-RBR, Ex. F, DE 12-6.)

    Instead, the Trustee resolved the fraudulent transfer claims by agreeing to release the Settling Parties in exchange for a payment of $7,500.[2]  (Chapter 7 Trustee's Motion, Subject to Higher and Better Offers, to Approve the Compromise and Settlement with Noctua Fund, LP, Mark Baum, James Panther and Garyn Angel bankruptcy case 09-20935-RBR, Ex. J, DE 12-10.) The Lender Group opposed the settlement on several grounds, including that the Trustee did not adequately investigate the merits of the claims against the Settling Parties and settled those claims too cheaply. (Opposition to Chapter 7 Trustee's Motion to Approve Compromise and Settlement, Ex. 5, DE 11-5; Declaration of Anthony Cataldo, Ex. 9, DE 11-9.) When the Trustee chose not to pursue the fraudulent transfer claim, the Lender Group filed a motion for derivative standing seeking authority from the Bankruptcy Court to bring claims on behalf of and for the benefit of the bankruptcy estate. (Motion for Derivative Standing to Pursue Claims against Mark Baum, James Panther and Noctua Fund on behalf of Debtor's Estate in bankruptcy case 09-20935-RBR; proposed Complaint, Ex. 7, DE 11-7; proposed Amended Complaint, Ex. 8, DE 11-8.)

    The settlement was approved by the Bankruptcy Court on August 9, 2011. (August 9,

---

[2] The settlement also provides for advancement by the Settling Parties to the bankruptcy estate of another $160,000 to be used to pursue other recoveries. (Chapter 7 Trustee's Motion, Subject to Higher and Better Offers, to Approve the Compromise and Settlement with Noctua Fund, LP, Mark Baum, James Panther and Garyn Angel bankruptcy case 09-20935-RBR, Ex. J, DE 12-10.)

2011 Bankruptcy Order Granting Trustee's Motion to Compromise Controversy, Ex. J, DE 12-11.)  The Bankruptcy Court also denied the motion for derivative standing without prejudice. (May 31, 2011 Bankruptcy Order, Ex. 11, DE 11-11.)  The Lender Group filed a Notice of Appeal with the Bankruptcy Court of the August 9, 2011 Order on August 19, 2011, but did not seek to stay the Order.[3] (Notice of Appeal, Ex. L, DE 12-12.)   The Settling Parties have deposited the settlement funds with the Trustee's counsel. (DE 5 at 4.)

The Trustee moves to dismiss the appeal as equitably moot on the basis that the Lender Group has not sought a stay of the order it wishes to appeal, which would have prevented the consummation of the settlement.  According to the Trustee, the consummation of the settlement, in conjunction with the passing of the statute of limitations under 11 U.S.C. § 546, means that no claims can be brought against the parties that were resolved by the payment of $7,500.  In response, the Lender Group contends that it should be permitted to bring an appeal of the Bankruptcy Court's order approving the settlement. Specifically, the Lender Group claims there is no evidence of an irrevocable transfer of settlement funds to the Trustee or any evidence of detrimental reliance by any third parties on the consummation of the settlement.  With respect to the statute of limitations issue, the Lender Group argues for equitable tolling based on the Settling Parties' notice of the claim and the fact that no parties have been prejudiced by the delay. Alternatively, the Lender Group states the appeal is not moot because there are potential claims not subject to the two-year statute of limitations.

II.  Discussion

_____

[3] An Order for Relief was entered in the bankruptcy case on August 21, 2009, which noted that the Debtor failed to file any timely pleading or defense to the petition. (August 21, 2009 Order for Relief in bankruptcy case 09-20935-RBR, Ex. D, DE 12-4.)

"The mootness doctrine, as applied in a bankruptcy proceeding, permits the courts to dismiss an appeal based on its lack of power to rescind certain transactions."  In re Honeywell Corp., 911 F.2d 1539, 1543 (11th Cir. 1990), rev'd on other grounds, Holywell Corp. v. Smith, 503 U.S. 47 (1992).  "The mootness standard is premised upon considerations of finality . . . and the court's inability to rescind . . . and grant relief on appeal." Id. (internal quotation marks omitted).  As noted by the Eleventh Circuit, the mootness inquiry "involves many subsidiary questions" including "[h]as a stay pending appeal been obtained?  If not, why not?" . . . "What type of relief does the appellant seek on appeal?  What effect would granting relief have on the interests of third parties not before the court?"  In re Club Assocs., 956 F.2d 1065, 1069 n.11 (11th Cir. 1992); see also Miami Ctr. Ltd. P'ship v. Bank on N.Y., 838 F.2d 1547, 1555 (11th Cir.1988) (noting that dismissal of an appeal on grounds of mootness is often granted when an appeal that would ultimately reverse the confirmation order would "knock the props out from under the authorization for every transaction that has taken place and create an unmanageable, uncontrollable situation for the Bankruptcy Court") (internal quotations and citations omitted).  In the end, however, "[t]he test for mootness reflects a court's concern for striking the proper balance between the equitable considerations of finality and good faith reliance on a judgment and the competing interests that underlie the right of a party to seek review of a bankruptcy court order adversely affecting him."  In re Club Assocs., 956 F.2d at 1069 citing In re Information Dialogues, Inc., 662 F.2d 475, 477 (8th Cir.1981).

Typically, the doctrine of equitable mootness is applied "to avoid disturbing plans of reorganization." In re Foutainebleau Las Vegas Holdings, LLC, 434 B.R. 716, 743 (S.D. Fla. 2010) citing 13B Charles Alan Wright et al., Federal Practice and Procedure § 3533.2.3, at 897

(3d ed. 2008).  That stated, the doctrine has been applied in other contexts.  <u>See</u>, <u>e.g.</u>, <u>In re New Century TRS Holdings, Inc.</u>, 407 B.R. 576, 586–90 (D. Del. 2009) (liquidation plan); <u>Aurelius Capital Master, Ltd. v. Tousa Inc.</u>, Nos. 08–61317–CIV, 08–61335–CIV, 2009 WL 6453077 (S.D.Fla. Feb.6, 2009) (cash-collateral order); <u>In re Delta Air Lines, Inc.</u>, 374 B.R. 516, 522–25 (S.D.N.Y. 2007) (order approving settlement agreement).

In terms of settlement agreements, courts have looked to see if an appellate court can easily "unwind" a settlement, such as when a settlement is "limited to a small number of parties, all before the court, and presents issues involving the transfer of money and not real property." <u>In re Cavic</u>, 380 Fed. App'x 611, 612 (9th Cir. 2010); <u>see also</u> <u>In re Healthco Intern., Inc.</u>, 136 F.3d 45, 49 (1st Cir. 1998) (appeal is not equitably moot when there has been no showing that the settlement proceeds could not be recovered with relative ease); <u>In re Chateaugay Corp.</u>, 167 B.R. 776, 779 (S.D.N.Y. 1994) (finding that appeal from settlement order was not moot, even though settlement was tied to confirmation of plan and settlement payments had been made, where settlement funds could be returned, or other effective relief granted, without preventing the reorganization of the debtor).  On the other hand, if undoing the settlement agreement would "complicate [the debtor's] right to an important hub of its operations and therefore risks some negative effect on its vitality as a reorganized entity," that factor would contribute to a finding of equitable mootness.  <u>In re Delta</u>, 374 B.R. at 524.

Here, there is no evidence before the Court of detrimental reliance on the settlement by any third-parties. Moreover, the settlement involved the transfer of money, not the conveyance of real property. While the Trustee informs the Court that the Settling Parties have deposited the settlement funds with its counsel, there is no evidence suggesting that the funds have already

been spent or, upon success of an appeal, that the bankruptcy court could not order the funds returned.[4]

That stated, the Trustee correctly points out that an important factor in its favor is the failure of the Lender Group to seek and obtain a stay to prevent the consummation of the settlement. While the Court agrees that this factor favors the Trustee, when examined in light of the entire record, it is unpersuasive.   As noted supra, the Court finds that there is no evidence suggesting that the settlement could not easily be undone. This is in contrast to those cases where, for example, a plan became effective and was implemented over the course of four years, see Matter of Berryman Prods., Inc., 159 F.3d 941, 945 (5th Cir. 1998), or where a "nightmarish situation for the bankruptcy court on remand" would be created that would result in "incalculable inequity" to those who relied on the unstayed order.   In re Public Service Co. of New Hampshire, 963 F.2d 469, 475 (1st Cir. 1992).  In the end, "the fact remains that the absence of a stay does not *compel* a finding of mootness in *all* cases.   In re Club Assocs., 956 F.2d at 1070 n.13 (11th Cir. 1992) (emphasis in the original); see In re Winn-Dixie Store, Inc., 286 Fed. App'x 619, 624 (11th Cir. 2008) (failure to seek a stay does not "in and of itself render[ ] an appeal moot").

Finally, the Trustee contends that the passing of the statute of limitations under 11 U.S.C. § 546 mandates a finding of equitable mootness.  In addressing this issue, the Court first turns to 11 U.S.C. § 546 which provides in part:

a) An action or proceeding under section 544, 545, 547, 548, or 553 of this title may not be

---

[4]  The burden of establishing mootness is on the party seeking dismissal. In re Foutainebleau, 434 B.R. at 738 citing Beta Upsilon Chi Upsilon Chapter at the Univ. of Fla. v. Machen, 586 F.3d 908, 916 (11th Cir. 2009).

commenced after the earlier of--

(1) the later of--

(A) 2 years after the entry of the order for relief; or

(B) 1 year after the appointment or election of the first trustee under section 702, 1104, 1163, 1202, or 1302 of this title if such appointment or such election occurs before the expiration of the period specified in subparagraph (A); or

(2) the time the case is closed or dismissed.

11 U.S.C. § 546.

According to the Trustee, the statute of limitations has run on the claim pursuant to section 548 of the Bankruptcy Code, by virtue of the August 21, 2009 Order for Relief, because neither the Trustee nor the Lender Group, acting derivatively on behalf of the Estate, would be able to bring the fraudulent transfer claims against the Settling Parties that were resolved by the payment of the $7500.  Although the Lender Group does not dispute that the statute of limitations has run on the fraudulent transfer claim, it asserts that equitable tolling would prevent its application to this claim.  Additionally, the Lender Group also states that the appeal is not moot because there are other non-time barred claims.

This Court need not resolve the applicability of equitable tolling in this case.[5]  Instead, the Court must examine the following: If the appeal was to proceed, and the Lender Group was to succeed on the appeal such that the matter was remanded to the Bankruptcy Court, could effective relief be afforded to the Lender Group?   The Court answers this question in the affirmative.  As pointed out by the Lender Group, and not disputed by the Trustee, there are

---

[5] For this reason, the Court will deny as moot the Lender Group's motion to exclude the mediator's statement.  That motion addressed the applicability of equitable tolling.

potential claims not subject to the two year statute of limitations that could be asserted against the Settling Parties.  With respect to the fraudulent transfer claim, the Bankruptcy Court would need to decide whether the record supports a finding of equitable tolling, assuming the appeal is successful and the settlement is set aside.

For the foregoing reasons, the Court finds that the proper balance between the considerations of finality on the judgment versus the right of a party to seek review of the bankruptcy court's order at issue is properly resolved in favor of permitting the appeal to go forward. See In re Club Assocs., 956 F.2d at 1069.

III. Conclusion

Accordingly, it is hereby **ORDERED AND ADJUDGED** as follows:

1)      The Trustee's Motion to Dismiss Appeal as Equitably Moot (DE 1) and the Trustee's Amended Motion to Dismiss Appeal as Equitably Moot (DE 12) are **DENIED.**

2)      Appellants' Motion to Exclude Mediator's Statement (DE 6) is **DENIED AS MOOT.**

3)      To the extent the Trustee has not spent the settlement funds, the Trustee is hereby ordered not to do so.

4)      The Clerk shall **CLOSE** this case.

5)	All pending motions are **DENIED AS MOOT**.

**DONE AND ORDERED** in Chambers at West Palm Beach, Palm Beach County,

Florida, this 31st day of October, 2011.

_____

KENNETH A. MARRA
United States District Judge